**FILED**

May 20, 2026
Jeanne A. Naughton, CLERK
United States Bankruptcy Court
Newark, NJ

By: _Juan Filgueiras_, Courtroom Deputy

|  |
|---|
| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY |
| In Re: Nicholia Cherry-Crockette, Debtor. |

Case No.:      25-21600 (VFP)

Chapter:      13

Hearing Date: April 2, 2026

Judge:        Vincent F. Papalia

## OPINION DENYING MOTION FOR SANCTIONS FOR WILLFUL VIOLATION OF THE AUTOMATIC STAY

**FOR PUBLICATION**

Appearances:

Nicholia Cherry-Crockette
59 Morris Street
East Orange, NJ 07017
*Pro se*

Steven P. Kelly, Esq.
STERN & EISENBERG
1120 Rt. 73
Mt. Laurel, NJ 08054
*Counsel for Rocket Mortgage, LLC*
*f/k/a Quicken Loans, LLC*

**HONORABLE VINCENT F. PAPALIA, Bankruptcy Judge**

### I.      INTRODUCTION

This matter comes before the Court on the *pro se* Debtor's Motion for Sanctions against

Rocket Mortgage, LLC for Willful Violation of the Automatic Stay (the "Sanctions Motion")

filed December 3, 2025.[1] For the reasons stated in this Opinion, the Sanctions Motion is

DENIED.

---

[1] Dkt. No. 29

## II.    JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b) and the Standing Orders of Reference entered by the United States District Court for the District of New Jersey on July 23, 1984, as amended on September 18, 2012 (Standing Order 12-1), and further amended on June 6, 2025 (Standing Order 2025-2). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (G). Venue is proper in this Court under 28 U.S.C. § 1408. The court issues the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052. To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

## III.    PROCEDURAL HISTORY

The Court held an initial hearing on the Sanctions Motion on February 10, 2026. Both the Debtor, Nicholia Cherry-Crockette (the "Debtor"), and counsel for Rocket Mortgage, LLC f/k/a Quicken Loans, LLC ("Rocket") appeared and presented argument (the "Initial Hearing"). Rocket defended the Sanctions Motion principally on the basis that it was required by law to send the subject Notice (as defined below) and therefore should not be held liable for any alleged stay violation. Rocket did not, however, cite any authority in support of its position.

At the Initial Hearing, the Court, based on its own research, observed that 12 C.F.R. § 1024.39 requires mortgage lenders to provide certain borrowers with notice of their options when a loan is in default, even if the borrower is in bankruptcy. *See* 12 C.F.R. § 1024.39. Accordingly, the Court provided the parties with the opportunity to address whether the existence of that federal regulation, which mandated the Notice, shielded Rocket from liability for an alleged stay

2

violation or, whether despite that regulation, Rocket's communication with the Debtor violated the automatic stay.

At the Initial Hearing, the Court found that the Debtor had failed to meet her burden of establishing a willful violation of the automatic stay under 11 U.S.C. § 362(k). Additionally, the Court noted that even if there had been a willful stay violation, the Debtor had failed to establish any actual damages resulting from the violation. Considering that the Debtor was appearing *pro se*, the Court permitted the Debtor to supplement her Motion as to these matters.[2]

The Debtor filed her supplemental brief[3] on March 3, 2026, and Rocket filed its reply[4] on March 20, 2026. The Court did not authorize any further submissions, but the Debtor nevertheless filed a Reply to Respondent's Supplemental Submission on March 27, 2026.[5] For the sake of completeness, the Court will address the Debtor's unauthorized submission as part of this Opinion.

## IV.    FACTUAL BACKGROUND

The Debtor filed her chapter 13 petition on October 31, 2025 and listed Rocket as a creditor. Rocket filed a Proof of Claim on December 22, 2025 asserting a secured claim in the amount of $439,231 based on a mortgage on the Debtor's property in East Orange, New Jersey. On November 6, 2025, Rocket sent the Debtor a notice outlining potential loss mitigation options available to the Debtor and addressing other related matters (the "Notice"). The Notice is the sole

---

[2] The Debtor did not list any damage amounts in the Sanctions Motion, but in her supplemental submission she asserted actual damages in the amount of $500; emotional distress damages in the amount of $7,500; and punitive damages in the amount of $10,000.
[3] Dkt. No. 120-2
[4] Dkt. No. 135
[5] Dkt. No. 146

basis for the Debtor's claim that Rocket violated the automatic stay.[6] The Notice is comprised of

six pages.[7] The first page states, in its entirety:

  Hi  Nicholia Cherry-Crockette & Michael Crockette,

 We know you're in bankruptcy or have received a bankruptcy discharge, and this is
not an attempt to get you to pay. We are required to send this notice. However, we
have resources that can help you, whether you've had:

  • A financial challenge
  • A loss of income
  • A serious life event

We collect all the information needed to accurately understand your
current situation and find the best solution for you.

If a valuation is obtained in connection with your application, you're
entitled to a free copy.

Please return your application by December 6, 2025. In the event you need
additional time to work with your attorney or a trustee, please feel free to call
us as we are here to help.

If you have other mortgages secured to this property, consider contacting
the mortgagees of those mortgages to discuss loss mitigation options.

Sincerely,

Your Account Resolution Team
AccountResolution@RocketMortgage.com

The second through fifth pages of the Notice contain "Information About Avoiding Foreclosure."

The sixth and final page of the Notice is the Servicemembers Civil Relief Act Notice Disclosure,

known as a HUD-92070, which is also a required disclosure in the foreclosure context.

## V.    ANALYSIS

---

[6] At the Initial Hearing, the Debtor stated that the Notice was not the only communication she
received from Rocket while in bankruptcy, but her supplemental submission does not mention
any further communication and there is no evidence before the Court that there were any.
[7] Sanctions Motion, Ex. A. [Dkt. No. 29-3]

1.  Debtor's Position

The Debtor's supplemental submission accurately frames the issue, stating: "Debtor

does not dispute that Regulation X requires mortgage servicers to provide early intervention

written notice to delinquent borrowers. However, the issue before this Court is not whether

Rocket was required to send a notice, but whether the specific language used in the notice

exceeded the scope of the regulation and constituted an act to collect a debt in violation of 11

U.S.C. § 362(a)(6)."[8] The Debtor goes on to state: "The focus of this supplemental submission is

limited and narrow: the 'foreclosure referral' language contained in the Rocket communication."[9]

The Debtor's supplemental submission does not, however, specifically identify any

"foreclosure referral" language in the Notice and the Debtor was unable to identify any at oral

argument.  Based on the Court's review of the Notice and the colloquy at oral argument, there are

only two possible parts of the Notice to which the Debtor may be referring. The first appears on

page two and states: "If payments have been missed or there's a reason for us to believe your

property is vacant or abandoned, we may refer your mortgage to foreclosure."[10] The second

appears in the Frequently Asked Questions section on page five and states: "2. **Will the

foreclosure process begin if I don't respond to this letter?** Possibly. If you do not respond to

this letter, we may refer your loan to foreclosure in accordance with your mortgage loan

documents and applicable law."[11] As will be discussed more fully, those provisions must be read

in context.

---

[8] Dkt. No. 120-2 at 1
[9] *Id.*
[10] Dkt. No. 29-3 at 1
[11] Dkt. No. 29-3 at 5 (emphasis in original)

At oral argument, the Debtor also argued that the Notice explicitly <u>required</u> her to call Rocket to prevent an immediate foreclosure. Again, she was unable to specifically identify any portion of the Notice that stated that failure to call Rocket will result in foreclosure. The Court's review of the Notice identified two provisions regarding calling Rocket and neither stated that the Debtor was required to call. The first appears in large font at the top of page one and states: "To Get Help With Your Mortgage, Call (800) 508-0944." The second appears on page two and states: "Not every client qualifies for every solution. That's why you should call us at (800) 508-0944 as soon as possible so we can discuss your situation and find the right solution for you."

2.   Rocket's Position

Rocket asserts that it fully complied with 12 C.F.R. § 1024.39(b) and the bankruptcy modifications contained in 12 C.F.R. § 1024.39(c). Rocket argues that "there is no language, expressly or implied, suggesting that the Notice is a threat of foreclosure it merely sets forth loss mitigation options including, but not limited to home retention options as well as alternative options (i.e., short sale or deed-in-lieu)."[12]

Rocket also addressed the sections of 12 C.F.R. § 1024.39 that describe the circumstances in which a lender or servicer is exempt from providing the otherwise required notice and contends that neither exemption is applicable.[13] The first exemption applies to a lender or servicer who has determined that no loss mitigation option is available.[14] This exemption is unavailable to Rocket because, it argues, "it had not yet reviewed the Debtor for possible home retention or alternative options as it relates to the real property."[15] The second exemption requires

---

[12] Dkt. No. 135 at 2
[13] *Id.*
[14] 12 C.F.R. § 1024.39(c)(1)(ii)
[15] Dkt. No. 135 at 2

proof that the borrower on the loan has provided a notification to the lender or servicer pursuant

to 15 U.S.C. § 1692c(c), which provides that a debt collector shall not communicate further with

a consumer with respect to the relevant debt if the consumer provides written notice to the debt

collector that he or she wishes the debt collector to cease further communication. Rocket

represents that it "did not, and has not, received any such communication from the Debtor."[16]

3. Applicable Federal Regulation

As the Court noted at the Initial Hearing, 12 C.F.R. § 1024.39 ("Early intervention

requirements for certain borrowers") requires HUD lenders to send borrowers in bankruptcy a

written notice outlining their options to avoid foreclosure. This regulation is presumably what the

Notice refers to when it states in the second line: "We are required to send this notice."[17] The

regulation provides in relevant part:

(b) Written notice

(1) Notice required. Except as otherwise provided in this section, a servicer shall provide
to a delinquent borrower a written notice with the information set forth in paragraph
(b)(2) of this section no later than the 45th day of the borrower's delinquency and
again no later than 45 days after each payment due date so long as the borrower
remains delinquent. A servicer is not required to provide the written notice, however,
more than once during any 180–day period. If a borrower is 45 days or more
delinquent at the end of any 180–day period after the servicer has provided the
written notice, a servicer must provide the written notice again no later than 180 days
after the provision of the prior written notice. If a borrower is less than 45 days
delinquent at the end of any 180–day period after the servicer has provided the
written notice, a servicer must provide the written notice again no later than 45 days
after the payment due date for which the borrower remains delinquent.

(2) Content of the written notice. The notice required by paragraph (b)(1) of this section
shall include:
(i) A statement encouraging the borrower to contact the servicer;
(ii) The telephone number to access servicer personnel assigned pursuant to §
1024.40(a) and the servicer's mailing address;

---

[16] *Id.*
[17] Dkt. No. 29-3 at 1

(iii) If applicable, a statement providing a brief description of examples of loss mitigation options that may be available from the servicer;

(iv) If applicable, either application instructions or a statement informing the borrower how to obtain more information about loss mitigation options from the servicer; and

(v) The Web site to access either the Bureau list or the HUD list of homeownership counselors or counseling organizations, and the HUD toll-free telephone number to access homeownership counselors or counseling organizations.

(3) Model clauses. Model clauses MS–4(A), MS–4(B), and MS–4(C), in appendix MS–4 to this part may be used to comply with the requirements of this paragraph (b).

(c) Borrowers in bankruptcy —

(1) Partial exemption. While any borrower on a mortgage loan is a debtor in bankruptcy under title 11 of the United States Code, a servicer, with regard to that mortgage loan:

(i) Is exempt from the requirements of paragraph (a) of this section;

(ii) Is exempt from the requirements of paragraph (b) of this section if no loss mitigation option is available, or if any borrower on the mortgage loan has provided a notification pursuant to the Fair Debt Collection Practices Act (FDCPA) section 805(c) (15 U.S.C. 1692c(c)) with respect to that mortgage loan as referenced in paragraph (d) of this section; and

(iii) If the conditions of paragraph (c)(1)(ii) of this section are not met, must comply with the requirements of paragraph (b) of this section, as modified by this paragraph (c)(1)(iii):

(A) If a borrower is delinquent when the borrower becomes a debtor in bankruptcy, a servicer must provide the written notice required by paragraph (b) of this section not later than the 45th day after the borrower files a bankruptcy petition under title 11 of the United States Code. If the borrower is not delinquent when the borrower files a bankruptcy petition, but subsequently becomes delinquent while a debtor in bankruptcy, the servicer must provide the written notice not later than the 45th day of the borrower's delinquency. A servicer must comply with these timing requirements regardless of whether the servicer provided the written notice in the preceding 180–day period.

(B) The written notice required by paragraph (b) of this section may not contain a request for payment.

(C) A servicer is not required to provide the written notice required by paragraph (b) of this section more than once during a single bankruptcy case.

12 C.F.R. § 1024.39.  Pursuant to this regulation, a HUD lender (like Rocket) is required to send

a written notice to a delinquent borrower that contains the information in subsections (b)(2)(i) –

(v) with the caveat provided in subsection (c)(1)(iii)(B) that for a debtor in bankruptcy the "written notice required by paragraph (b) of this section may not contain a request for payment."

On its face, the Notice is fully compliant with the applicable federal regulation. The Notice was sent within the proper timeframe, it contains the information required by subsections (b)(2)(i) – (v), and it does not contain a request for payment. Nonetheless, the Debtor correctly argues that compliance with 12 C.F.R. § 1024.39 does not necessarily provide blanket immunity.

Whether sending the written notice required by 12 C.F.R. § 1024.39 can be found to violate the automatic stay appears to be an issue of first impression, at least in this Circuit. However, the main argument the Debtor makes in this regard is simply not correct. Debtor states that under subsection (c) of 12 C.F.R. § 1024.39, any communication must indicate: (i) that foreclosure is stayed under § 362(a); (ii) referral to foreclosure requires relief from stay; and (iii) loss mitigation is subject to court supervision. Subsection (c) does not mandate any of those disclosures. The only difference between the notice required to be sent inside or outside of bankruptcy, aside from timing, is that the written notice sent to a borrower in bankruptcy may not contain a request for payment. 12 C.F.R. § 1024.39(c)(1)(B).

As already stated, the Notice contained no demand for payment and certainly no clear demand for payment. The parties did not cite to any cases (and the Court's own research did not uncover any) that directly address whether sending the written notice required by 12 C.F.R. § 1024.39 might violate the automatic stay or the discharge injunction.[18] The general proposition

---

[18] While section 362 imposes an automatic stay on "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of [the debtor's bankruptcy case]," section 524 "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [discharged] debt as personal liability of the debtor …." 11 U.S.C. § 362(a)(6); 11 U.S.C. § 524(a)(2). Courts have likened potential violations of the automatic stay to potential violations of the discharge

9

that certain communications may violate either of those statutory provisions—and the

circumstances under which such a violation occurs—has been addressed by other courts, as is

discussed in more detail below.

    4.  <u>Communications Violative of the Automatic Stay or Discharge Injunction</u>

At the outset, it is important to recognize that the automatic stay does not prohibit all

communication between a debtor and creditor; the automatic stay only prohibits communications

that can be interpreted as an attempt to coerce the payment of a prepetition debt.[19] The Debtor

maintains that by "linking non-response to foreclosure referral, Rocket implied that failure to

engage directly outside the structured Chapter 13 process could trigger foreclosure

progression."[20] Besides interpreting the language of the Notice in a manner that does not

comport with its plain language, the Debtor appears to be under the mistaken belief that it is

improper for a lender and borrower to speak without the supervision of the bankruptcy court.

Debtor's asserted fear that speaking to Rocket "outside the chapter 13" would necessarily

imperil her bankruptcy case and constitute a stay violation is unfounded. Debtors in chapter 13

cases can and do contact their lenders regularly—usually through their attorneys—to inquire

about the possibility of refinancing their mortgages, a short sale, or the like. There is nothing in

the Bankruptcy Code that prevents this type of communication during the pendency of a debtor's

case. In fact, such communications are encouraged and often necessary because a debtor

obtaining a loan modification from a lender may be the only way to make their chapter 13 plan

---

injunction. *See In re Fucilo*, 2002 Bankr. LEXIS 475, at *39 (Bankr. S.D.N.Y. Jan. 24, 2002)
(noting that § 524 is the post-discharge analogue of § 362).

[19] *In re Knowles*, 442 B.R. 150, 160 (B.A.P. 1st Cir. 2011) ("a 'mere request for payment' does
not violate the stay unless it is coercive or harassing."); *In re Wilkinson*, 2025 WL 2671026, at *3
(Bankr. E.D. Cal. Sept. 16, 2025) ("But not all communications between a debtor and a creditor
are prohibited; it is only those designed to coerce payment of a prepetition debt.").

[20] Dkt. No. 120-2 at 3

feasible.[21]  The fact that the Notice encouraged the Debtor to contact Rocket is not indicative of

coercion or harassment.[22]

That is not, however, the end of the inquiry. This Court must still determine whether the

Notice at issue in this case, viewed wholistically, crossed the line from informative to coercive or

harassing. It has been recognized that the fact-intensive nature of such an inquiry makes it

challenging to develop a bright-line test.[23] Courts must analyze the "overall tenor" of the

communication to determine whether it was informational or sought to collect a debt personally

from the debtor.[24]

With regard to the Notice, a principal area of the Debtor's concern appears to be that the

portion of the Frequently Asked Questions section on page five states: "2. Will the foreclosure

process begin if I don't respond to this letter? Possibly. If you do not respond to this letter, we

may refer your loan to foreclosure in accordance with your mortgage loan documents and

applicable law."[25] Viewed in isolation, this language might generally support the Debtor's

position that a failure to respond could lead to foreclosure outside the bankruptcy process. But,

as the Notice indicates, that would have to occur in accordance with "applicable law" which

---

[21] The Bankruptcy Court for the District of New Jersey created a program to facilitate just this type of communication between borrowers and lenders called the Loss Mitigation Program. *See* Loss Mitigation Program and Procedures, adopted August 1, 2011 by General Order and last amended effective December 17, 2019. Further, a debtor is free to pursue loss mitigation options outside the Court's Loss Mitigation Program.

[22] Further support for this proposition can be found in one of the model provisions that the federal regulations suggest that lenders include in their written notices: "Call us today to learn more about your options and instructions for how to apply." 12 C.F.R. § Pt. 1024, App. MS-4.

[23] *Zotow v. Zotow (In re Zotow)*, 432 B.R. 252, 258 (B.A.P. 9th Cir. 2010) ("Whether a communication is a permissible or prohibited one is a fact-driven inquiry which makes any bright line test unworkable.") (collecting cases); *In re Culpepper*, 481 B.R. 650, 658 (Bankr. D. Or. 2012) ("Because of the variety of situations in which alleged violations of the discharge injunction can arise, such cases are very fact dependent.")

[24] *In re Mele*, 486 B.R. 546, 557 (Bankr. N.D. Ga. 2013)

[25] Dkt. No. 29-3 at 5

11

includes obtaining relief from the automatic stay. Moreover, there are other sections of the Notice that place this language in proper context.

First, the opening line of the Notice states: "We know you're in bankruptcy or have received a bankruptcy discharge, and this is not an attempt to get you to pay. We are required to send this notice."[26] Additionally, at the bottom of page three the Notice states: "If you have an active bankruptcy or you received a bankruptcy discharge, we are sending this for informational or legal purposes only. We're not trying to collect against you personally. If you have any questions about this communication or your obligation to pay, please contact your attorney."[27] The Court recognizes that the Debtor does not have an attorney that she could have contacted about the Notice, but the Notice also provided a telephone number and address for the lender to be contacted with any questions or concerns. The Debtor did not avail herself of the option to contact her lender and clarify what the Notice meant; instead, she simply chose to seek damages for willful violation of the stay based on this single communication.

The Court finds these disclaimers to be unambiguous and consistent with an intent <u>not</u> to violate the stay. Put simply, applicable law does not require a lender to affirmatively state that no foreclosure can happen without relief from the automatic stay, as the Debtor argues. The Court finds that the inclusion of the cited disclaimers in the Notice, coupled with the obviously generic descriptions of options for borrowers in default, strongly undercuts the Debtor's argument that the Notice was intended to coerce or compel her to respond to the Notice or otherwise risk foreclosure while the automatic stay was in place.

---

[26] *Id.* at 1
[27] *Id.* at 3

12

Courts have consistently found that unambiguous disclaimers that state that a written communication is not an attempt to collect the debt and is for informational purposes, do not violate the automatic stay or the discharge injunction. For example, in *Wilkinson* a bankruptcy court recently found that five communications sent to the debtor's spouse, even if they had been addressed to the debtor directly, were not violative of the stay because they were informational in nature and "not in the flavor of coercion and/or harassment."[28] Significant to the court's analysis was that all but the 1099-A tax form included language to the effect that "Our records show that you are a debtor in bankruptcy. We are sending this statement to you for informational and compliance purposes only. It is not an attempt to collect a debt against you."[29] Notably, one of the five communications was "a letter outlining mortgage assistance options."[30]

Similarly, in *Brown v. Pennsylvania State Employees Creditor Union*, the Third Circuit found that correspondence with a debtor, even when it states an amount due, is not a stay violation if the letter is "merely informational and not an active action to collect the debt."[31] In *Brown*, the letter stated that unless the debtor reaffirmed her debt to the credit union she could no longer be a member of the credit union in the future.[32] The Third Circuit found that although the debtor interpreted that to be coercive, the letter did not constitute a stay violation because it merely stated the credit union's existing policy.[33]

---

[28] *In re Wilkinson*, 2025 WL 2671026, at *4 (Bankr. E.D. Cal. Sept. 16, 2025)
[29] *Id.*
[30] *Id.* The opinion did not identify that communication as one sent in accordance with 12 C.F.R. § 1024.39 but that is likely the case.
[31] 851 F.2d 81, 85 (3d Cir. 1988)
[32] *Id.*
[33] *Id.*

The case of *In re Bell* is also instructive here. *Bell* involved the creditor sending two separate communications to the debtors ten days apart.[34] The first was an Annual Escrow Account Disclosure Statement which set forth new payment information based on an escrow shortage and indicated when the new payment amount would be effective.[35] The second page of the Escrow Statement includes the disclaimer: "If you are in bankruptcy or received a bankruptcy discharge of this debt, this communication is not an attempt to collect the debt against you personally, but is notice of a possible enforcement of the lien against the collateral."[36] Ten days later, the lender sent the debtors a one-page Mortgage Statement indicating a total amount due and due date, the possibility of a late charge, and the following disclaimer which appeared in the middle of the page: "If you are in bankruptcy or received a bankruptcy discharge of debt, this communication is not an attempt to collect a debt against you personally but strictly for informational purposes only."[37] The *Bell* case is similar to the case before the Court because a lender is required by law to send an escrow statement annually.[38] After considering both letters individually and collectively, the *Bell* court decided the correspondence was permissible and not a stay violation because the "correspondence to Debtors on its face does not smack of coercion or harassment."[39]

The same is true of the Notice at issue here. The Notice merely states that foreclosure is a possibility—but this must be read in conjunction with other parts of the Notice stating that if a borrower is in bankruptcy, that it is not an attempt to collect a debt and that its purpose is to

---

[34] *In re Bell*, 2014 WL 6913509 (Bankr. N.D.N.Y. Nov. 13, 2014)
[35] *Id.*
[36] *Id.*
[37] *Id.*
[38] 12 C.F.R. § 10247.17(i)
[39] *Id.* at *4

14

inform the Debtor about her options to avoid foreclosure. The Notice also advised that any
foreclosure would have to take place in accordance with applicable law. That the Debtor chose to
focus on certain aspects of the Notice to support her apparent belief that it was coercive is not
determinative. As the Court found in *Brown*, it is the nature of the communication itself and not
the debtor's subjective understanding of it that controls.[40]

The foregoing case citations should not be understood to mean that this Court is finding
that a disclaimer shields all communications by a lender to a debtor/borrower from potentially
violating the stay or discharge injunction.[41] Quite to the contrary, numerous cases have found a
violation of the stay or discharge injunction despite a disclaimer, where evidence of coercion or
harassment is present.[42] In this case, the Debtor has not presented the Court with any evidence of
alleged coercion or harassment beyond the sending of the Notice—and only the Notice. As
already noted, the Court does not find the contents of the Notice to be *per se* or otherwise
coercive or harassing.

5.   The Inapplicable or Non-Existent Cases Cited by Debtor

In her supplemental submission, the Debtor cites three cases in support of her position
that there is a willful stay violation. None of those cases involved a legally required notification
such as what is at issue here, nor did any of those cases analyze the sufficiency of a disclaimer in
the particular circumstances of the case.

---

[40] *Id.*

[41] *In re Kirby*, 599 B.R. 427, 444–45 (B.A.P. 1st Cir. 2019) (noting that the inclusion of a
bankruptcy disclaimer does not insulate a creditor from liability for a stay violation but finding
on those facts that there was no violation of the discharge injunction)

[42] *See, e.g., Sears Roebuck & Co. v. Epperson (In re Epperson)*, 189 B.R. 195, 198-99 (E.D. Mo.
1995); *In re Youngkin*, 2014 Bankr. LEXIS 765, at *16 (Bankr. E.D.N.C. Feb 27, 2014) (finding
that in spite of the disclaimer, the mortgagee's monthly informational statement violated the
discharge injunction because it was "nothing more than a cleverly disguised form meant to
induce payment of funds [from the debtor] to the mortgagee].")

The Debtor cites *Lansdale Family Restaurants, Inc.*[43] for the proposition that "conduct that pressures debtor to pay outside the bankruptcy process may violate stay."[44] That case does not stand for that proposition. The focus of that case was on whether post-petition delivery charges were a subterfuge for reducing pre-petition debt.[45] The Third Circuit's finding of a willful violation of the stay in those circumstances has no bearing on the analysis before this court.

Similarly, *In re University Medical Center*[46] is cited by the Debtor for the proposition "that § 362 prohibits acts intended to recover claims, even indirectly."[47] However, this case also does not support the Debtor's arguments. In *University Medical Center*, the Third Circuit found that the Department of Health and Human Services needed stay relief to exercise its contractual rights against the Debtor. Moreover, despite the finding of a stay violation the Third Circuit found that it was not a <u>willful</u> violation and that the debtor was therefore not entitled to damages.[48] Finally, the Debtor cites *In re Lansaw*[49] for the proposition that a "willful violation occurs when a creditor knows of the bankruptcy and intentionally commits the act [that violates the stay]."[50] There is no dispute that this is the standard for finding a willful violation of the stay under 11 U.S.C. § 362(k), but that is not what happened here.

---

[43] 977 F.2d 826 (3d Cir. 1992)
[44] Dkt. No. 120-2 at 2
[45] *Lansdale*, 977 F.2d at 828 ("[t]he sole attack in the district court on the bankruptcy court's judgment was based on an alleged erroneous finding of fact that the delivery fee payments were not applied to the pre-petition debt.")
[46] 973 F.2d 1065 (3d Cir. 1992)
[47] Dkt. No. 120-2 at 2
[48] That case was decided under 362(h) and that ruling has been superseded by statute under the new version of 362(h) found at 362(k).
[49] 853 F.3d 657 (3d Cir. 2017)
[50] Dkt. No. 120-2 at 2

In her unauthorized Reply, the Debtor reiterates her mistaken position that the Notice was a stay violation because it "implicitly encouraged action outside of the structured Chapter 13 process."[51] As the Court has already extensively addressed, the protections of § 362 do not prohibit all communication between debtors and creditors outside of the bankruptcy case. Here, the Debtor cites the case of *In re Diamond*, 346 B.R. 51 (Bankr. S.D.N.Y. 2006). That citation is incorrect, and the Court was unable to find the case using the name, date, or any other identifying information, leading the Court to conclude that this is likely a phantom case generated by AI. Another nonexistent citation by the Debtor is to *In re Lisenby*, 374 B.R. 271 (Bankr. M.D. Ala. 2007). Upon further research, the Court found a similar case: *In re Lisenby*, 2006 WL 802392 (Bankr. M.D. Ala. Feb. 22, 2006), which involved a request for default judgment on a willful violation of the automatic stay and a violation of the Fair Debt Collection Practices Act. Assuming that was the case the Debtor intended to cite, it is still unhelpful because that case did not, as the Debtor suggests, hold that compliance with another statute does not excuse violation of the automatic stay.

The Debtor also relies on *In re Ramirez*[52] for the unremarkable proposition that creditor conduct designed to coerce payments violates § 362. While that is a proper case citation, *Ramirez* does not advance the Debtor's position because, unlike the facts in that case (which involved a creditor's refusal to return client files after a bankruptcy filing), this Court has already found that Rocket sending the Notice was not designed to coerce payment from the Debtor.

Additionally, although the Debtor's citation to *In re Joubert*[53] for the proposition that creditors must comply with the automatic stay regardless of other regulatory obligations appears

---

[51] Dkt. No. 146 at 3
[52] 183 B.R. 583 (Bankr. S.D. Tx. 1995)
[53] 411 F.3d 452 (3d Cir. 2005)

to be on point, *Joubert* does not stand for that proposition. In *Joubert*, the Third Circuit was addressing the issue of whether § 105(a) of the Bankruptcy Code affords a debtor a private cause of action to remedy alleged violations of § 506(b). At no point in the case does it discuss the proposition of law for which the Debtor cited it.

Finally, the Debtor argues that Rocket's reliance on 15 U.S.C § 1692c(c) (failure to file a cease communication notice) is irrelevant. The Court agrees. The existence or non-existence of a cease communication notice forms no part of its reasoning for why sending the Notice was not a stay violation. Further, there were no notices from the Debtor to Rocket to cease communicating and no further communications were sent in any event.

6.   Rocket Did Not Willfully Violate the Stay

As noted above, to successfully plead a cause of action for a willful violation of the stay under 11 U.S.C. § 362(k), a debtor must "show, by a preponderance of the evidence, that: (1) a violation of the stay occurred; (2) the creditor had knowledge of the bankruptcy case when acting; and (3) the violation caused actual damages."[54] Under § 362(k), conduct that violates the automatic stay is willful if the creditor knew of the stay and if the creditor's conduct that violated the automatic stay was intentional.[55]

Here, the Debtor has proven only one of those three elements—that Rocket had knowledge of the bankruptcy filing on November 6 when it mailed the Notice to the Debtor. The Notice itself directly acknowledges the bankruptcy filing by noting in the opening line: "We know you're in bankruptcy or have received a bankruptcy discharge, and this is not an attempt to get you to pay." For the reasons stated, the Debtor has failed to demonstrate the key element—

---

[54] *Kaushas v. Popple Constr., Inc. (In re Kaushas)*, 616 B.R. 57, 62 (Bankr. M.D. Pa. 2020)
[55] *Id.*

that a stay violation occurred, willful or otherwise. The action Rocket took by sending the Notice

was willful, but it did not violate the stay because it contained no demand for payment and was

not coercive or harassing. As a result of this failure, the Court does not need to reach the third

element, which is damages.[56]

7. <u>A Legally Required Notice is Entitled to a Rebuttable Presumption that it Does Not Violate the Stay</u>

The alleged stay violation in this case was based on the single communication by Rocket

to the Debtor—the Notice that Rocket was required by law to send. As a matter of policy, a

lender should not be placed in the untenable position of being required by law to send a

communication to a debtor and having that same communication subject it to a claim for willful

violation of the stay.

Accordingly, the Court finds that a mortgage lender sending a legally required

communication to a debtor is entitled to a rebuttable presumption that the required

communication does not constitute a stay violation. A debtor may rebut that presumption with

clear and convincing evidence demonstrating that either: i) the communication was coercive

and/or harassing; or ii) the communication did not comply with the applicable law or regulation.

---

[56] As was indicated at the Initial Hearing, if the Court were to reach the damages issue it would find that the Debtor still did not meet this burden as she did not submit any competent or persuasive evidence in support of her claim. The conduct of Rocket here—sending a single, legally required communication—falls far short of the "egregious" or "outrageous" conduct that was present in other cases where the stay violation is clear and punitive damages were considered. *See, e.g., In re Johnson*, 601 B.R. 365, 382 (Bankr. E.D. Pa. 2019) (punitive damages available where conduct is outrageous); *In re Lansaw*, 853 F.3d 657, 667 (3d Cir. 2017) (damages granted in case involving patent and egregious violation of stay, including physical threats against debtor and her property, trespass, and attempted interference with debtor's new lease); *In re Wagner*, 74 B.R. 898, 900-01 (Bankr. E.D. Pa. 1987) (conduct was egregious where creditor entered debtor's home and threatened physical violence).

19

## Conclusion

The Debtor has the burden to demonstrate by a preponderance of the evidence that a willful stay violation occurred, and she has not met that burden. For the reasons stated, the Sanctions Motion is DENIED. The Court will enter an Order in accordance with this Opinion.

May 20, 2026

Hon. Vincent F. Papalia, U.S.B.J.